# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL KRAMER,                    )
                                   )
    Plaintiffs,        )          Civil Action No. 13-606
                                   )
      v.         )          Chief District Judge Joy Flowers
                                   )          Conti
THE CITY OF NEW KENSINGTON,        )
et al,                             )          Magistrate Judge Cynthia Reed Eddy
                                   )
    Defendants.        )


# REPORT AND RECOMMENDATION

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.      RECOMMENDATION

     For the reasons that follow, it is respectfully recommended that the Motion for Summary

Judgment filed on behalf of Defendants the City of New Kensington, the New Kensington Police

Department, and Officers Baker, Grillo and Schubert [ECF No. 83] be granted.  It is further

recommended that summary judgment be entered in favor of Defendant William Weber.

## II.     REPORT

     Plaintiff, Michael Kramer ("Plaintiff"), is a *pro se* state prisoner who has filed this civil

rights suit pursuant to 42 U.S.C. § 1983, naming as Defendants the following: the City of New

Kensington, the New Kensington Police Department, and its officers Baker, Grillo and Schubert

as well as the Arnold Police Department officer William Weber.  Plaintiff's Amended Complaint

alleged the violation of his rights under the Fourth, Eighth and Fourteenth Amendments to the

United States Constitution. [ECF No. 39].  On October 13, 2013, Officer Weber filed a Motion

to Dismiss [ECF No. 42]. Magistrate Judge Maureen P. Kelly issued a Report and

Recommendation [ECF No. 59] on March 10, 2014, in which she recommended that Plaintiff's Fourth Amendment claim against Defendant Weber arising out of the alleged excessive use of force be dismissed without prejudice, because Plaintiff did not allege that Weber was physically present on the balcony and had an opportunity to intervene and yet failed to do so. Report and Recommendation. [ECF No. 59 at 7-8]. Magistrate Judge Kelly also recommended that the Motion to Dismiss Plaintiff's Eighth Amendment claim be granted, but that, given the allegations of Defendant Weber's presence at the scene of Plaintiff's fall and his failure to seek appropriate and necessary emergency medical treatment for Plaintiff, he set forth sufficient facts to state a claim for the violation of his Fourteenth Amendment substantive due process rights. Report and Recommendation. [ECF No. 59 at 8-9]. Finally, the Report and Recommendation recommended that Plaintiff's due process claim arising out of an allegedly false affidavit be dismissed for failure to state a claim. Report and Recommendation [ECF No. 59 at 11].

On April 4, 2014, in the absence of any objections, Chief District Judge Joy Flowers Conti adopted the Report and Recommendation and ordered that the Motion to Dismiss filed on behalf of William Weber [ECF No. 42] be granted with regard to Plaintiff's Eighth Amendment excessive use of force claim, Fourth Amendment excessive use of force claim, and due process claims, but denied in all other respects. [ECF No. 61]. On July 30, 2014, Defendant Weber filed his answer. [ECF No. 68]. Discovery is now complete.

Presently pending is the Motion for Summary Judgment filed by Defendants[1] the City of New Kensington, the New Kensington Police Department, and Officers Baker, Grillo and Schubert, with brief in support [ECF Nos. 83 and 84]. The matter has been fully briefed by both

---

[1] Defendant William Weber has not filed a motion for summary judgment, has not joined the motion, although he submitted an Affidavit which is attached as an exhibit to the pending motion. [ECF No. 83-6].

sides, and the Court has reviewed the record. Accordingly, the Defendants' Motion is ripe for disposition.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

A. **Standard of Review**

In adjudicating a motion for summary judgment, we apply the well-established legal standard presently set forth in Fed. R. Civ. P. 56(a), pursuant to which summary judgment shall be granted when no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.,* 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989) (the nonmovant must present affirmative evidence -- more than a scintilla but less than a preponderance -- which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party "cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument," *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322; *see also Saldana v. Kmart Corp.*, 260

F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare

assertions, conclusory allegations or suspicions to show the existence of a genuine issue."

*Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh

the evidence or to make credibility determinations, but is limited to deciding whether there are

any disputed issues and, if there are, whether they are both genuine and material. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097,

1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52).

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue

of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth.*

*of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d

895, 900 (3d Cir. 1997)).

With that standard in mind, we review the evidence of the record. Except as otherwise

indicated, the following facts are undisputed.

B.  **Background Facts**

In support of their Motion, Defendants have submitted numerous affidavits. [ECF Nos.

83-2 to 83-8]. Plaintiff has also submitted a Declaration and medical records.  [ECF No. 90-2

through 90-9].

On July 16, 2011, Plaintiff Michael Kramer was a fugitive with an outstanding arrest

warrant.  [ECF No. 85, ECF No. 83-2 at 3]. The FBI asked the New Kensington Police

Department to assist in the arrest.  [ECF No. 83-4 at 1, ECF No. 83-5 at 1, ECF no. 83-7 at 1].

Defendants Baker, Weber, Grillo, and Schubert were called upon for this. After proceeding to the location of the Plaintiff's whereabouts, Defendants Baker, Grillo, and Schubert were given access to the residence by a resident. [ECF No. 83-5 at 4]. According to Defendants, Plaintiff was discovered in the bathroom, ordered to display his hands, and asked to provide identification. [ECF No. 83-5]. According to numerous officers present at the time, Plaintiff "fled through the living room onto the balcony/porch and jumped off the balcony to the ground below." [ECF No. 85 at 7]. Defendant Schubert, who was in the back yard of the apartment building, observed Plaintiff jump off the balcony; no other person was on the balcony at that time. [ECF No. 83-7 at paragraphs 6-8]. Plaintiff fell to the ground, immediately got up, and began running. [ECF No. 83-6 at 5, 83-7 at 8]. Defendant Weber, Chief of Police for the City of Arnold, pursued Plaintiff, running, along with Officer Cardenas and four other officers for approximately twenty minutes. [ECF No. 83-6 at 6]. Plaintiff was arrested without physical confrontation behind a parked car, located approximately 1500-1800 feet away from his original location. [ECF No. 83-6 at 7]. Plaintiff was then transported to the New Kensington Police Department, and was subsequently transported by his Parole Agent, Thomas Bender, to Pennsylvania State Correctional Institution at Pittsburgh (SCI-Pittsburgh). [ECF No. 83-2 at 15].

As a result of these events, Plaintiff was later charged with (i) falsification of ID, (ii) resisting arrest, and (iii) aggravated assault.[2]

According to the Plaintiff's version of events, the Plaintiff was on the balcony of a three story building smoking a cigarette when police cars surrounded the residence. [ECF No. 90-2]. It was when the Plaintiff "voiced his surrender" and attempted to enter the residence through the

---

[2] On July 9, 2013 Plaintiff entered a plea of guilty before this Court as to armed bank robbery, possession of a firearm by a convicted felon, and using and carrying a firearm during and in relation to a crime of violence, and was later sentenced to 156 months imprisonment. 2:14-cr-00207. On January 15, 2015, Plaintiff entered a plea of guilty before this Court to the crime of forgery of the signature of a judge and was sentenced to six months imprisonment at 2:14-cr-00109.

balcony door that Defendant Baker shoved the plaintiff backwards "without provocation or threat." [ECF Nos. 3 ¶ 14, 15, 90-2 at ¶4]. The Plaintiff states that he toppled over the balcony rail and fell two and a half stories, [ECF No. 3 ¶ 15], whereupon he "began hollering in pain due to a substantial amount of pain to [his] neck and back area." [ECF No. 90-2 at ¶ 7] . Plaintiff further contends that his arrest took place at the scene of this fall, where he lay on the ground "thrashing about in agony." [ECF No. 3 at ¶16]. Defendants Grillo, Baker, and Schubert then proceeded to "forcefully pin down and restrain" the Plaintiff in the act of arresting him, thus causing "further pain and injury." [ECF No. 3 ¶16]. Plaintiff avers that he "screamed in pain and repeatedly requested the arresting officers and bystander officers to provide [him] with medical attention" which "all relevant officers at the arrest site ignored." [ECF No. 90-2 at ¶¶ 9, 10]. Plaintiff states once he arrived at the New Kensington Police Department, he "persistently requested to see a nurse or doctor." [ECF No. 90-2 at ¶ 12].

Defendants Grillo, Baker, and Schubert each have filed declarations in which they deny being present with Plaintiff on the balcony and deny pushing him off the balcony. [ECF No. 83-6 at para. 5, 8; 83-7 at para. 8, 11; 83-5 at para. 13,14, 15]. The Defendants consistently recall that Plaintiff jumped off the building of his own accord in order to resist arrest.

These three Defendants' understanding is buttressed by the declaration of William Jackson, the Plaintiff's former cellmate Pennsylvania State Correctional Institution at Huntington. [ECF No. 83-3 at para. 1, 2]. While he was incarcerated with the Plaintiff, Jackson was privy to discussion of Plaintiff's lawsuit, and revealed in his declaration that "Mr. Kramer specifically told me he was not pushed from the balcony by the officers but, that he jumped." [ECF No. 83-3 ¶ 3]. Jackson states that Plaintiff solicited inmates to testify that he was pushed

off the balcony, and offered money in exchange for their statements. Plaintiff denies this. [ECF No. 90-2 at ¶ 26].

Additionally, Thomas Bender, Plaintiff's Parole Agent, was contacted by authorities after Plaintiff had been arrested, and came to the New Kensington Police Department to transport Plaintiff to SCI-Pittsburgh. During transport, Bender had a conversation with Plaintiff in which Plaintiff told Bender that "he jumped off the balcony of his own volition while fleeing from the police." [ECF No. 83-2 ¶8]. Bender asked Plaintiff why he would jump off a balcony, to which Plaintiff stated "to get away from the police." [ECF No. 83-2 at ¶ 9]. When Bender "asked him if he was injured, he indicated he had minor soreness in his leg and neck. . . At no time did Mr. Kramer indicate any serious injury or broken bones . . . [or] that he needed medical attention . . . [or] that he was pushed or injured" by the officers. [ECF No. 83-2 at ¶¶ 11- 13]. Plaintiff did not mention having been pushed or injured by the New Kensington police officers, nor did he state that he had requested medical treatment. [ECF No. 83-2 at ¶¶ 13-15.]

Plaintiff denies having informed Bender that he jumped from the balcony to evade authorities. [ECF No. 90-2 at ¶ 17].

A non-party officer, Scott Cardenas, employed by the borough of Lower Burrell Police Department, assisted in apprehending Plaintiff that day. He states that "[a]s part of the arrest I observed Mr. Kramer fleeing from the police, running without any apparent physical impediments until he was surrounded by police officer. . . . After [he] was surrounded, he was apprehended without any confrontation or physical contact. I did not hear [him] make any complaints of injuries or health problems. I did not observe any police officer have physical contact with him other than when he was handcuffed and escorted into the patrol vehicle." He further states that while he was able to observe or hear Plaintiff, he did not hear him indicated he

needed medical attention or otherwise indicate that he had any serious injury or broken bones. [ECF No. 83-8 at ¶¶ 1-9].

Following his arrest, progress notes from SCI-Pittsburgh at intake dated July 17, 2011 show that Plaintiff suffered from a sore neck and back, "inmate *fell* 2 stories running from parole." [ECF No. 90-6] (emphasis added). Plaintiff was transported to Allegheny General Hospital; the Emergency Department's triage nursing assessment notes that his mode of arrival was "ambulatory" and further notes that his chief complaint was he "fell 2 nights ago from 2 stories . . . neck pain today also back pain." [ECF No. 90-8]. The record evidence is silent as to a diagnosis neck fracture. We simply have an allegation in his Amended Complaint [ECF No. 39 at ¶ 29] (alleging a break and that he wore neck brace). A July 27, 2011 a dental screening, notes that Plaintiff reported he had a "broken neck 3 weeks ago—pushed off balcony." [ECF No. 90-7].

C. **Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to obtain relief under Section 1983, a plaintiff must show, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994). *See also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## 1. Use of Excessive Force

Defendants argue that the evidence of record does not establish a genuine issue of material fact that the officers used excessive force against Plaintiff in the course of his arrest of July 16, 2011. We agree and recommend that summary judgment be entered in their favor as to this claim.

The use of excessive force by law enforcement officials in making an arrest may give rise to a claim under 42 U.S.C. § 1983 for a violation of the Fourth Amendment of the United States Constitution. To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Curley v. Klem*, 499 F.3d 199, 203 n. 4 (3d Cir. 2007). The parties do not dispute that a "seizure" occurred; therefore, the only question is whether the use of force during the arrest was unreasonable.

"The test of reasonableness under the Fourth Amendment is an objective one." *Los Angeles County, California v. Rettele*, 550 U.S. 609 (2007). Proper application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempt to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Other relevant factors include "the duration of the action, whether the action takes place in the context of affecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

The court must make this assessment "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. As the United States Supreme Court has cautioned, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* (citation omitted). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split—second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–397.

We find that the record evidence does not support a cause of action and that there is no genuine issue of material fact in this case to support a claim for excessive force. Plaintiff has presented bare assertions and conclusory allegations and suspicions that he was pushed off the balcony and pinned to the ground; in contrast, the evidence in support of Defendants' motion is so one sided that they must prevail as a matter of law. We have considered the facts and circumstances of the incident of his arrest, including the severity of the crime at issue, whether he posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempt to evade arrest by flight. We see no evidence of excessive use of force under the circumstances such that a reasonable jury could find in Plaintiff's favor. We therefore recommend that summary judgment be granted in favor of the Defendants as to the use of excessive force.

### 2. Deliberate Indifference to Medical Needs

Plaintiff contends that the Defendants were deliberately indifferent to his need for medical treatment when they failed to call an ambulance to the location of his arrest or otherwise obtain medical care for him. We previously held that Plaintiff's claims must proceed under the

Fourteenth Amendment's due process standard. *See Cooleen v. Lamanna*, 248 F. App'x. 357, 361 (3d Cir. 2007) ("[S]ubstantive due process rights are invoked by pre-trial detainees and other nonconvicted persons seeking medical care who cannot invoke the Eighth Amendment.")  [ECF No. 59 at 9].  Defendants argue that there is no genuine issue of material fact that Plaintiff either requested or was denied the requisite medical care.

Plaintiff contends he was denied treatment immediately after his surrender, and that treatment was only given once he was transported to SCI-Pittsburgh early in the morning of July 17, 2011.  It is uncontroverted that once incarcerated there, he was evaluated in the medical unit and transferred to Allegheny General Hospital, where he was diagnosed with a neck injury.

"[P]olice officers are liable for the unconstitutional denial of medical assistance when there is (1) a serious medical need, and (2) acts or omissions by the police officers that indicate deliberate indifference to that need." *Sullivan v. Warminster Twp*., 765 F. Supp. 2d 687, 702 (E.D. Pa. 2011), *citing Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.' " *Id., quoting Natale,* 318 F.3d at 582. The United States Court of Appeals for the Third Circuit has "found deliberate indifference in situations where necessary medical treatment is delayed for nonmedical reasons." *Natale*, 318 F.3d at 582 (citations and internal quotation marks omitted).

Defendants have presented sufficient evidence to support their motion for summary judgment; no genuine issue of material fact remains to support a claim that they were deliberately indifferent to Plaintiff's medical needs.  Again, we simply have Plaintiff's bare assertions and conclusory allegations that he notified the officers on the scene and those otherwise involved in arresting and transporting him that he required medical attention.  No

reasonable jury could find for Plaintiff under the facts and circumstances of this case. The record evidence overwhelmingly supports a finding that after his surrender Plaintiff did not request medical care. We will therefore recommend that Defendants' motion for summary judgment be granted and that Plaintiff's claim of deliberate indifference to medical needs be dismissed as a matter of law.

### 3. Municipal Liability

Defendant New Kensington requests that we grant summary judgment as to Plaintiff's claim for municipal liability based on an alleged custom, policy or practice of constitutional deprivation. A municipality cannot be held liable under § 1983 for the actions of its employees on a respondeat superior theory. *Monell v. N.Y. City Dep't of Soc. Servs*., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). When a municipal entity is sued under 1983, "the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996), *citing Monell*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611.

There also must be a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." *Jiminez v. All Am. Rathskeller, Inc.* 503 F.3d 247, 249–50 (3d Cir. 2007), *quoting City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The Third Circuit has directed that a complaint alleging a *Monell* claim "must identify a custom or policy, and specify what exactly that custom or policy was ." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir.2009), *citing Phillips*, 515 F.3d at 232.

The acts complained of here, even if they have been shown by factual support, relate to the conduct of the police officers, rather than a custom or policy. The law is clear that Plaintiff may not recover under a theory of respondeat superior pursuant to § 1983. In addition, to the extent that Plaintiff asserts that "as a matter of policy and practice has with deliberate indifference failed to adequately discipline, train or otherwise direct police officers concerning the rights of citizens . . . [and] failed to properly sanction or discipline officers. . . for violations of constitutional rights" [ECF No 91 at p. 11] these are bare assertions and conclusions without support in the record. Moreover, the law requires a causal link between a municipal policy or custom and the alleged constitutional deprivation, and the evidence of record does not support such a link. Plaintiff simply provides his self-serving declaration without any additional credible evidence.

We note that in his Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff states that "the facts are in the possession of the moving party and the defendants have not yet complied with my discovery request." [ECF No. 91 at 13]. However, on May 30, 2013, we ordered "that plaintiff shall immediately advise the Court of any change in address. Failure to do so may result in dismissal for failure to prosecute if the Court and other parties are unable to serve pleadings, orders and other documents upon plaintiff." [ECF No. 8 at 3]. Subsequently, on December 3, 2014, we granted Plaintiff's Motion to Conduct Discovery, and ordered Defendants to provide Plaintiff with "all medical records in their possession concerning Plaintiff" and "all records concerning the alleged incident or incidents." [ECF No. 78 at 1]. Plaintiff apparently moved without advising the Court of a change in address, and therefore Defendants could not have served discovery on him. Defendants herein attempted to serve documents and responses to discovery requests twice at Plaintiff's address of record, and were

unable to serve Plaintiff. [ECF No. 82]. Plaintiff was also put on notice that he needed to file any objections to discovery on or before January 5, 2015. [ECF No.78]. He failed to do so.

For all these reasons, we therefore recommend that Plaintiff's claim for municipal liability as to the City of New Kensington be dismissed for failure to prosecute, in addition to there being no genuine issue of material fact that Defendants are entitled to judgment as a matter of law.

### 4. Defendant William Weber

Defendant William Weber, the Chief of Police for the City of Arnold Police Department, has not filed a motion for summary judgment, despite the fact that he is represented by counsel and a claim against him survived his Motion to Dismiss. [ECF No. 59] Our review of the record evidence obtained in the pending motion leads us to the natural conclusion that his failure to join the other Defendants' motion was an oversight, particularly given his filing an Answer [ECF No. 68] as well as an Affidavit in support of Defendants' motion. Weber attests to Plaintiff not exhibiting injuries on the day of his arrest as well as Plaintiff's failure to request medical assistance. [ECF No. 83-6]. Plaintiff was aware of Weber's affidavit and attempted to refute it in his brief in opposition. A fair reading of his responses to the motion for summary judgment leads us to conclude that Plaintiff assumed that Weber had also filed a dispositive motion. [ECF No. 91 at 4]. Thus, we find he would not be prejudiced by our decision to enter judgment in favor of Defendant Weber. Our analysis of liability as to the claim of deliberate indifference to medical needs leads us to conclude that summary judgment should be granted sua sponte in favor of William Weber, for the same reasons previously set forth.

District courts may grant summary judgment sua sponte in appropriate circumstances. *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004). A court may not

enter judgment, however, without "first placing the adversarial party on notice that the court is considering a sua sponte summary judgment motion" and providing that party "an opportunity to present relevant evidence in opposition to that motion." *Chambers Dev. Co. v. Passaic Cnty. Utils. Auth.*, 62 F.3d 582, 584 n. 5 (3d Cir. 1995). Notice is satisfied if "the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson*, 355 F.3d at 223, *quoting Leyva v. On the Beach, Inc*., 171 F.3d 717, 720 (1st Cir. 1999)) (internal quotation marks omitted). An exception to the notice requirement in cases where summary judgment is granted sua sponte arises where the following conditions are present: "(1) the point at issue is purely legal; (2) the record was fully developed[;] and (3) the failure to give notice does not prejudice the party." *Gibson*, 355 F.3d at 219.

Out of an abundance of caution, we accordingly **put Plaintiff on notice** that the Court intends to grant summary judgment in favor of Defendant Weber, absent relevant evidence in opposition being presented to the Court in the form of written objections as set forth in the scheduling order that follows.

### D.  CONCLUSION

For the foregoing reasons, is respectfully recommended that the Defendants' Motion for Summary Judgment be granted in full.  It is further recommended that summary judgment be entered in favor of Defendant Weber.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections no later than August 24, 2015. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to

appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing

objections may file their response to the objections within fourteen (14) days thereafter in

accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

*/s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Dated:  August 6, 2015
Cc:      The Honorable Joy Flowers Conti
         United States District Judge

All counsel of record by Notice of Electronic Filing

Michael Kramer
GH-7068
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698