**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL KRAMER, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 13-606 |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF NEW KENSINGTON, | ) | |
| et al, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**CONTI, Chief District Judge**

### I.     Introduction

Pending before the court in this civil rights action asserted under 42 U.S.C. § 1983 is a

motion for summary judgment (ECF No. 83) filed by defendants The City of New Kensington,

("New Kensington"), The New Kensington Police Department (the "New Kensington Police

Department"),[1] Anthony Grillo ("Grillo"), Russell Baker ("Baker"), and Gary Schubert

("Schubert" and collectively with New Kensington, the New Kensington Police Department,

Grillo, and Baker, the "New Kensington defendants"). The New Kensington defendants argue a

reasonable jury could not find in favor of plaintiff Michael Kramer ("Kramer") with respect to

the claims he asserts against them, and, therefore, summary judgment should be entered in their

favor. (ECF No. 83.) Kramer argues, however, that the motion for summary judgment should be

---

[1]     A municipality and its police department are a single entity for purposes of § 1983
liability. Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997). New Kensington
and the New Kensington Police Department are, therefore, a single entity for purposes of
plaintiff's claims and any resulting liability in this case. The court in this opinion, however,
refers to each entity by its name because that is how plaintiff names those defendants in the
amended complaint.

denied because he adduced evidence sufficient from which a reasonable jury could find in his favor. (ECF No. 91.)

The case was referred to a magistrate judge for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1) and Rules 72.C and 72.D of the Local Rules of Court for the Western District of Pennsylvania. On August 6, 2015, the magistrate judge filed a report and recommendation that this court should grant the New Kensington defendants' motion for summary judgment with respect to all counts asserted against the New Kensington defendants and defendant William Weber ("Weber"), who did not file a motion for summary judgment. (ECF No. 97.) On August 27, 2015, Kramer filed objections to the report and recommendation arguing, among other things, that an affidavit Kramer submitted on his own behalf created disputes of material fact sufficient to preclude the entry of summary judgment in favor of the New Kensington defendants. (ECF No. 98.) Those objections are currently pending before this court.

After a de novo review of all the submissions of the parties in this case, the undersigned district court judge agrees *in part* with Kramer. He submitted evidence sufficient to create genuine disputes of material fact that preclude the entry of summary judgment in this case with respect to some of his claims, including his claim asserted against Weber, who did not file a motion for summary judgment in this case. The magistrate correctly determined, however, that the entry of summary judgment is appropriate with respect to Kramer's claims against New Kensington and the New Kensington Police Department based upon Baker's, Grillo's, and Schubert's alleged use of excessive force against Kramer and deliberate indifference to his medical needs. The court will, therefore, adopt in part and reject in part the report and recommendation of the magistrate judge for the reasons set forth herein.

2

## II.    Procedural History

On May 10, 2013, Kramer—acting as a pro se litigant who is currently incarcerated—filed a complaint under 42 U.S.C. § 1983 asserting claims based upon "use of excessive force," "deliberate indifference to medical needs," and "due process." (ECF No. 3.)  On the same day, Kramer elected to have his case randomly assigned to a United States District Judge, pursuant to 28 U.S.C. § 636(c)(2). The undersigned district court judge was assigned to this case and it was referred to the magistrate judge. On August 21, 2013, the New Kensington defendants filed an answer and affirmative defenses. (ECF No. 21.) On August 26, 2013, Weber filed a motion to dismiss the complaint and brief in support of the motion. (ECF Nos. 24, 25.) On September 26, 2013, Kramer filed a response in opposition to the motion to dismiss and a brief in support. (ECF Nos. 35, 36.) On October 1, 2013, Kramer filed an amended complaint in which he asserts claims based upon "use of excessive force," "deliberate indifference to medical needs," and "due process." (ECF No. 39.) On the same day, the New Kensington defendants filed an answer and affirmative defenses to the amended complaint. (ECF No. 40.)

On October 15, 2013, Weber filed a motion to dismiss the amended complaint. (ECF No. 42.) On October 18, 2013, Weber filed a brief in support of the motion to dismiss. (ECF No. 48.) On November 18, 2013, Kramer filed a response in opposition to the motion to dismiss and a brief in support of the response. (ECF Nos. 52, 53.) On March 10, 2014, the magistrate judge issued a report and recommendation that Weber's motion to dismiss be granted without prejudice with respect to Kramer's claims for excessive force and due process, but denied with respect to his claims based upon the denial of medical assistance. (ECF No. 59.) On April 4, 2014, the undersigned district court judge adopted the report and recommendation of the magistrate judge. (ECF No. 60.)

On February 4, 2015, the New Kensington defendants filed a motion for summary judgment, brief in support, and concise statement of material facts. (ECF Nos. 83, 84, 85.) On May 7, 2015, Kramer filed a response to the concise statement of material facts and a brief in opposition to the motion for summary judgment. (ECF Nos. 90, 91.) On May 19, 2015, the New Kensington defendants filed a reply, which they entitled a response, to Kramer's response in opposition. (ECF No. 93.) On May 29, 2015, Kramer filed a sur-reply, which he entitled a response, to the New Kensington defendants' reply. (ECF No. 94.)

On August 6, 2015, the magistrate judge filed a report and recommendation that this court should grant the New Kensington defendants' motion for summary judgment, and enter judgment in favor of the New Kensington defendants and Weber, who did not file a motion for summary judgment. (ECF No. 97 at 15.) On August 27, 2015, Kramer filed objections to the report and recommendation.[2] (ECF No. 98.) On September 4, 2015, the New Kensington defendants filed a response in opposition to Kramer's objections. (ECF No. 99.) On September 24, 2015, Kramer filed a reply, entitled a response, with respect to his objections. (ECF No. 101.) The New Kensington defendants' motion for summary judgment is now ripe to be decided by the court.

### III.    Factual Background

On July 16, 2011, Kramer was a fugitive with an outstanding arrest warrant. (ECF Nos. 83 ¶ 4; 83-2 ¶ 3.) The Federal Bureau of Investigation ("FBI") asked officers of the New

---

[2]     The New Kensington defendants in their response in opposition to plaintiff's objections to the report and recommendation assert that plaintiff's objections were untimely filed because they were filed three days after the deadline set by the magistrate judge. In light of plaintiff being pro se and currently incarcerated, plaintiff's objections being filed three days past the deadline set by the magistrate judge is not a ground for this court to adopt the report and recommendation as the opinion of the court.

Kensington Police Department, i.e., Grillo, Baker, and Schubert, to assist in arresting Kramer. (ECF No. 83-4 ¶ 1; ECF No. 83-5 ¶ 1, ECF No. 83-7 ¶ 1.) Weber, Chief of Police for the City of Arnold Police Department, and Scott Cardenas ("Cardenas"), an officer with the Lower Burrell Police Department, were also asked to assist in arresting Kramer. (ECF Nos. 83-6 ¶ 3; 83-8 ¶ 2.)

On July 16, 2011, Kramer was at 1818 ½ Kenneth Avenue, New Kensington, Pennsylvania. (ECF No. 90-2 ¶ 1; ECF No. 83-4 ¶ 2.) Grillo, Baker, and Schubert were advised that Kramer was located at 1818 ½ Kenneth Avenue and traveled to that location. (ECF Nos. 83-4 ¶¶ 2-3; 83-5 ¶¶ 2, 3; 83-7 ¶¶ 2-3.) According to Kramer, he was on the second floor balcony of 1818 ½ Kenneth Avenue when he "observed multiple police vehicles surround[ing] the residence." (ECF No. 90-2 ¶ 1.) The "resident" of 1818 ½ Kenneth Avenue informed Kramer that the police were "banging on the door," and Kramer instructed the resident to "let them in." (ECF No. 90-2 ¶ 2.) The resident permitted Baker, Grillo, and Weber inside the home to conduct a search for Kramer. (ECF Nos. 83-4 ¶ 4; 83-5 ¶ 4; 90-2 ¶ 3.) While Baker and Grillo went into the residence, Schubert "was stationed in the back yard of the [residence]." (ECF No. 83-7 ¶ 5.)

Grillo, Baker, Weber, Cardenas, and Schubert each submitted an affidavit with respect to this case. Their accounts of the incident involving Kramer on July 16, 2011, are similar.

According to Grillo and Baker:

– Kramer was discovered in the bathroom during the search of the residence, and was asked to exit the bathroom, display his hands, and provide identification (ECF Nos. 83-4 ¶¶ 5-7; 83-5 ¶¶ 5-7);

– the identification provided by Kramer to Grillo and Baker was not his identification, and when the officers confronted Kramer about the false identification, "Kramer ran from the living room area and jumped off the porch and landed on the ground below and then began to flee on foot" (ECF Nos. 83-4 ¶ 8; 83-5 ¶ 8);

– none of the officers present at 1818 ½ Kenneth Avenue were ever on the second floor balcony with Kramer or pushed Kramer off the second floor balcony (ECF Nos. 83-4 ¶¶ 9-10; 83-5 ¶¶ 9-10); and

– Kramer jumped off the second floor balcony in order to flee from the police (ECF Nos. 83-4 ¶ 11; 83-5 ¶ ¶ ¶ 9-11, 16).

According to Baker:

– it was reported to him that after Kramer jumped off the balcony he headed north (ECF No. 83-5 ¶ 12);

– he went to his patrol vehicle and "found Kramer hiding" and Baker "commanded him to halt" (ECF No. 83-5 ¶ 14);

– Kramer "fled but, ran directly to…Schubert and other officers who effectuated the arrest" (ECF No. 83-5 ¶ 14);

– he observed Kramer's arrest, and the arresting officers did not cause physical harm to Kramer (ECF No. 83-5 ¶ 15); and

– Kramer did not state that he was injured or needed medical attention (ECF No. 83-5 ¶ 17).

According to Weber:

– Kramer jumped from the second floor balcony of 1818 ½ Kenneth Avenue in order to evade arrest (ECF No. 83-6 ¶ 4);

– after plaintiff "fell to the ground, he immediately got up, and began running" (ECF No. 83-6 ¶ 5);

– "[f]ive police officers, from the New Kensington and Arnold Police Departments, were in pursuit of Plaintiff for approximately twenty minutes" (ECF No. 83-6 ¶ 6); and

– Kramer did not exhibit any signs of injury, request medical assistance, or appear to be injured when he was arrested (ECF No. 83-6 ¶¶ 8-10).

According to Schubert who was standing in the back yard of the residence when Grillo, Baker, and Weber went inside the residence to search for Kramer:

– "Kramer was not pushed off the balcony, he was alone on the balcony and then he jumped" (ECF No. 83-7 ¶¶ 6-7);

6

- he ordered Kramer to stop, but Kramer "got up and ran" (ECF No. 83-7 ¶ 8);

- he never saw Grillo or Baker while he was in the backyard (ECF No. 83-7 ¶ 9);

- he did not see any officers injure Kramer (ECF No. 83-7 ¶ 10);

- he pursued Kramer when he began to flee (ECF No. 83-7 ¶ 11);

- Kramer voluntarily surrendered, was apprehended, and transported to the police department (Id.); and

- Kramer never indicated he needed medical assistance (ECF No. 83-7 ¶ 12).

According to Cardenas:

- he observed Kramer fleeing from the police, i.e., "running without any apparent physical impediments until he was surrounded by police officers" (ECF No. 83-8 ¶ 3);

- Kramer was apprehended without any confrontation or physical contact (Id. ¶ 4);

- he did not hear or observe Kramer request medication attention or indicate he sustained any serious injuries (Id. ¶¶ 5, 7, 8); and

- he personally observed Kramer's arrest, and Kramer was not pushed or injured by any of the police officers during the encounter (Id. ¶ 9).

Kramer's account of what occurred with the police on July 16, 2011, materially differs from the accounts provided by Grillo, Baker, Weber, Schubert, and Cardenas. According to Kramer:

- he was on the second floor balcony of 1818 ½ Kenneth Street smoking a cigarette when he observed multiple police vehicles surround the residence (ECF No. 90-2 ¶ 1);

- after the resident let Grillo, Weber, and Baker into the residence, Grillo and Weber began a search of the residence (ECF No. 90-2 ¶ 4);

- when Kramer saw Baker enter the second floor landing, he "voiced [his] surrender while opening the screen door" (ECF No. 90-2 ¶ 5);

- "Baker rushed forward and shoved [Kramer] backwards before [he] could enter into the livingroom [sic] and submit [his] person to authorities" (ECF No. 90-2 ¶ 5);

- Kramer fell two and one-half stories to the ground as a result of Baker pushing him (ECF No. 90-2 ¶ 6);

- "[u]pon regaining consciousness [Kramer] began hollering in pain due to a substantial amount of pain to [his] neck and back area" (ECF No. 90-2 ¶ 7);

- "[t]he arresting officers pinned [Kramer] to the ground by placing a knee onto [his] neck and lower back which magnified the painful effects of [his] injuries" (ECF No. 90-2 ¶ 8);

- Kramer repeatedly requested "the arresting officers" to provide him with medical attention (ECF No. 90-2 ¶ 9);

- "[a]ll relevant officers at the arrest site ignored [Kramer's] pleas for medical attention" (ECF No. 90-2 ¶ 10);

- Kramer was transferred to the New Kensington Police Department "for an undetermined amount of hours in which [he] persistently requested to see a nurse or doctor" (ECF No. 90-2 ¶ 12); and

- Kramer's requests for medical attention were ignored by the employees and officers of the New Kensington Police Department (ECF No. 90-2 ¶ 13).

On July 16, 2011, after Kramer was arrested, the New Kensington Police Department contacted Kramer's parole agent, Thomas Bender ("Bender"), to inform him about Kramer's arrest. (ECF No. 83-2 ¶ 4.) Bender traveled to the New Kensington Police Department to transport Kramer to the Western Penitentiary ("SCI-Pittsburgh"). (Id. ¶ 5; ECF No. 90-2 ¶ 14.) Kramer and Bender offered different accounts about the conversation they had during the transport from the New Kensington Police Department to SCI-Pittsburgh. According to Kramer:

- he informed Bender that he fell from a balcony and seriously injured his neck and back and requested medical attention (ECF No. 90-2 ¶ 16);

- Bender told Kramer that he would receive medical attention at SCI-Pittsburgh (ECF 90-2 ¶ 17); and

– he never discussed the circumstances surrounding his arrest with Bender or informed him that he jumped from a balcony to evade authorities (Id.).

According to Bender:

– he discussed with Kramer the circumstances surrounding Kramer's arrest (ECF No. 83-2 ¶ 7);

– Kramer told Bender that he jumped off a balcony "of his own volition" to flee from the police (ECF No. 83-2 ¶¶ 8-9);

– Kramer told Bender "he had minor soreness in his leg and neck" (ECF No. 83-2 ¶ 10);

– Kramer never indicated he had any serious injury or broken bones or needed medical attention (ECF No. 83-2 ¶¶ 11-12);

– Kramer did not tell Bender that he was pushed off the balcony by the police (ECF No. 83-2 ¶ 13); and

– Kramer did not tell him that he requested medical attention from anyone at the New Kensington Police Department (ECF No. 83-2 ¶ 14).

The New Kensington defendants submitted an affidavit from William Jackson ("Jackson"), who averred:

– he was plaintiff's former cellmate at the Pennsylvania State Correctional Institution at Huntingdon (ECF Nos. 83-3 ¶ 2; 93-1 at 1-3);

– Kramer discussed with him the details of this case (ECF No. 83-3 ¶ 2);

– Kramer told him that "he was not pushed from the balcony by the officers but, that he jumped…[and] immediately following this jump he was twice asked by the officers if he needed medical attention but, that he refused as he did not realize he was injured" (ECF No. 83-3 ¶ 3);

– Kramer actively solicited inmates to recruit witnesses to "state that he was pushed, and did not jump, off the balcony" and offered money in exchange for those statements (ECF No. 83-3 ¶ 4); and

– Kramer asked him to find people to give a statement that they saw police officers push Kramer off the balcony (Id. ¶ 6).

Kramer in his brief in opposition to the New Kensington defendants' motion for summary judgment argued Jackson committed perjury because Kramer was never incarcerated at SCI-Huntingdon. (ECF No. 91 at 5.) The New Kensington defendants in a reply brief asserted that "it is possible Mr. Jackson confused the jail" in which he and Kramer were incarcerated during the same period of time. (ECF No. 93 at 1.) The New Kensington defendants attached to the reply brief a copy of Kramer's and Jackson's "Contact History," which shows they shared a cell from April 7, 2014, through April 18, 2014. (ECF No. 2 at 2 (citing ECF No. 93-1 at 1-3).)

Kramer submitted various forms from SCI-Pittsburgh and a medical record detailing the injuries he sustained following the incident on July 16, 2011. (ECF Nos. 90-1-90-6.) An intake form from SCI-Pittsburgh dated July 17, 2011, reflects that Kramer had an urgent medical referral because he "fell 2 stories running from parole," and was "slow to walk due to pain." (ECF No. 90-3.) A "Suicide Risk Indicators Checklist" from SCI-Pittsburgh dated July 17, 2011, reflects that Kramer "[n]eeds medical attention due to a fall while running from parole." (ECF No. 90-4.) A "Symptoms Review" form from SCI-Pittsburgh dated July 17, 2011, reflects that Kramer reported "pain or pressure in chest," "shortness of breath at rest," and "back pain" as a result of a "fall." (ECF No. 90-5.) Progress notes from SCI-Pittsburgh intake dated July 17, 2011, provide Kramer had evidence of trauma and acute medical conditions because he "fell 2 stories running from parole" and had a sore neck and back. (ECF No. 90-6.) The progress notes provide that Kramer would be transferred to a doctor. (Id.) Dental records from the Commonwealth of Pennsylvania Department of Corrections dated July 27, 2011, reflect Kramer had a "broken neck 3 weeks ago—pushed off balcony." (ECF No. 90-7.) A "Triage Nursing Assessment" from Allegheny General Hospital dated July 17, 2011, reflects Kramer's "chief complaint" was that he "fell 2 nights ago from 2 stories" and was currently experiencing neck

and back pain. (ECF No. 90-8.) Kramer's medical records from West Penn Allegheny Health System dated July 18, 2011, show that he complained of "neck pain" after a "moderate-to high-level fall" and sustained a "C1 fracture," "[a]rm and knee contusions," and an "[a]bdominal wall contusion." (ECF No. 98-2.)

## IV.    Standard of Review

### A.  De Novo Review of the Report and Recommendation

Federal Rule of Civil Procedure 72 and Local Rule 72 set forth a procedure for litigants to use to object to a magistrate judge's proposed findings of fact and recommendations with respect to dispositive motions and to have the matter heard by the assigned district court judge. Federal Rule of Civil Procedure 72 provides:

**(b) Dispositive Motions and Prisoner Petitions.**

> **(1) Findings and Recommendations**. A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement. A record must be made of all evidentiary proceedings and may, at the magistrate judge's discretion, be made of any other proceedings. The magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact. The clerk must promptly mail a copy to each party.

> **(2) Objections**. Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.

> **(3) Resolving Objections**. The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b). Local Rule 72(D)(2) similarly provides:

> **2. Objections to Magistrate Judge's Proposed Findings.** Any party may object to the Magistrate Judge's proposed findings, recommendations or report under this rule within fourteen (14) days after date of service. Such party shall file with the Clerk of Court, and serve on all parties, written objections which shall specifically identify the portions of the proposed, recommendations or report to which objection is made and the basis for such objections. Such party may be ordered to file with the Clerk of Court a transcript of the specific portions of any evidentiary proceedings to which objection is made. The opposing party shall be allowed fourteen (14) days after date of service to respond to the objections. A District Judge shall make a de novo determination of those portions to which objection is made and may accept, reject or modify in whole or in part, the findings and recommendations made by the Magistrate Judge. The District Judge, however, need not conduct a new hearing and may consider the record developed before the Magistrate Judge, making his or her own determination on the basis of that record, or recommit the matter to the Magistrate Judge with instructions.

W.D. Pa. Civ. R. 72(D)(2). The court in accordance with 28 U.S.C. § 636(b)(1)(C) is required to

"make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." 28 U.S.C. §. 636(b)(1)(C).

> "De novo review means the district court must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered. The district court must arrive at its own independent conclusion about those portions to which objections are made.
>
> …
>
> The…district judge must actually review and consider the evidence presented to the magistrate judge; for the district judge to act on the basis of the magistrate judge's findings and recommendations alone establishes that de novo review has not occurred.
>
> …
>
> Where the district judge says that review has occurred…that should suffice.

12 CHARLES A. WRIGHT, ARTHUR R. MILLER, RICHARD L. MARCUS, FEDERAL PRACTICE AND

PROCEDURE § 3070.2 (3d ed. 2014).

### B. Summary Judgment

Summary judgment is appropriate if the record shows that there is no genuine dispute with respect to any material fact and the movant is entitled to judgment as a matter of law. FED R. CIV. P. 56(a). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Even then, the dispute over the material fact must be genuine, such that a reasonable jury could resolve it in the nonmoving party's favor. Id. at 248-49.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. Liberty Lobby, 477 U.S. at 255; Wishkin v. Potter, 476 F. 3d 180, 184 (3d Cir. 2007); Doe v. Cnty. of Centre, Pa., 242 F. 3d 437, 446 (3d Cir. 2001); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F. 3d 129, 130 (3d Cir.2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323 – 24 (1986). The summary judgment inquiry asks whether there is a need for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such

that a reasonable jury could return a verdict for the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Liberty Lobby, 477 U.S. at 248 – 49.

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment.  Celotex, 477 U.S. at 323; Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.1996).  The moving party may satisfy its burden either by producing evidence showing the absence of a genuine issue of material fact or by demonstrating that there is an absence of evidence to support the nonmoving party's case.  Marten v. Godwin, 499 F.3d 290, 295 (3d Cir.2007) (citing Celotex, 477 U.S. at 325).  A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more of those elements.  Celotex, 477 U.S. at 322 – 23.  Once the movant meets that burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide.  FED. R. CIV. P. 56(e); see Liberty Lobby, 477 U.S. at 247 – 48; Celotex, 477 U.S. at 323 – 25.  If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law.  Liberty Lobby, 477 U.S. at 249.

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen

opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.' " Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir.2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F. 3d 226, 233 (3d Cir.2002)).

In cases involving *pro se* litigants, the court must liberally construe submissions. Hodson v. Alpine Manor, Inc., 512 F. Supp. 2d 373, 384 (W.D. Pa. 2007) (citing Haines v. Kerner, 404 U.S. 519 (1972)). Submissions are read to "raise the strongest arguments suggested therein." Id. (citing Burgos v. Hopkins, 14 F. 3d 787, 790 (2d Cir. 1994)). Yet, "a forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability." Id. Bald assertions unsubstantiated by record evidence will not defeat a well-supported motion for summary judgment. Id. (citing Carey v. Crescenzi, 923 F. 3d 18, 21 (2d Cir. 1991)).

## V. Discussion

Kramer filed the amended complaint pursuant to 42 U.S.C. § 1983. Section 1983 does not create any substantive rights; rather, it is a vehicle for vindicating rights created by the United States Constitution or a federal statute. DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005). To prevail under § 1983, a plaintiff must prove that he suffered the deprivation of a right secured by the United States Constitution or federal law by a person acting under color of state law. Morrow v. Balaski, 719 F.3d 160, 165–66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir.2000) (en banc)); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). Here, the parties do not dispute that the New Kensington defendants acted under color of state law. The issue before the court is whether there is a dispute of material fact with

respect to whether the New Kensington defendants deprived Kramer of a right secured by the United States Constitution or federal law.

In analyzing a § 1983 claim, the court must first identify the constitutional or statutory right alleged to have been violated. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir.2003). In the amended complaint, Kramer sets forth "claims" based upon "use of excessive force" under the Fourth Amendment, "deliberate indifference to medical needs" under the Fourteenth Amendment, and "due process" under the Fourth Amendment. Whether the New Kensington defendants are entitled to summary judgment with respect to each of those claims will be addressed below.

**A. Use of Excessive Force**

The use of excessive force by law enforcement officials in making an arrest may give rise to a claim under 42 U.S.C. § 1983 based upon a violation of the Fourth Amendment to the United States Constitution. "'To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable.'" Curley v. Klem, 499 F.3d 199, 203 n. 4 (3d Cir. 2007) (quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999)). "The test of reasonableness under the Fourth Amendment is an objective one." Los Angeles Cnty. v. Rettele, 550 U.S. 609, 614 (2007). Proper application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Whether the amount of force used is reasonable must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham 490 U.S. at 396. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers'…violates the Fourth Amendment." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–397.

The magistrate judge recommended that the court grant the New Kensington defendants' motion for summary judgment with respect to plaintiff's excessive force claims. (ECF No. 97 at 10.) The magistrate judge explained: "[p]laintiff has presented bare assertions and conclusory allegations and suspicions that he was pushed off the balcony and pinned to the ground; in contrast, the evidence in support of Defendants' motion is so one sided that they must prevail as a matter of law." (Id.) The court must reject the recommendations of the magistrate judge with respect to this issue. At the summary judgment stage of litigation, the court is not permitted to make credibility determinations about the evidence or weigh the evidence; rather, the court must determine whether the evidence presented creates a genuine dispute of material fact. This determination concerns whether the nonmovant set forth evidence from which a reasonable jury could find in its favor. The fact that the New Kensington defendants submitted seven affidavits in support of their positions and Kramer submitted only one in support of his position is not determinative at this stage of the litigation. Because—as detailed below—Kramer set forth evidence sufficient from which a reasonable jury could find Grillo, Schubert, and Baker used

excessive force to arrest him, the court will reject the magistrate judge's report and recommendation and deny the motion for summary judgment with respect to this issue.

Kramer's claims for excessive force are based upon his averments that (1) Baker pushed him off the second floor balcony after he voiced his surrender, and (2) after his fall when he was first regaining consciousness the "arresting officers pinned [Kramer] to the ground by placing a knee onto [his] neck and lower back which magnified the painful effects of [his injuries]." (ECF No. 90-2 ¶ 8.) Each alleged incident and the evidence set forth by Kramer to defeat the motion for summary judgment will be addressed below.

### 1.  Kramer's Averment that Baker Pushed Kramer Off the Balcony

The New Kensington defendants presented evidence in the form of affidavits from officers on the scene during Kramer's arrest. In those affidavits the affiants uniformly aver that Kramer jumped voluntarily and was not pushed by Baker from the second floor balcony of 1818 ½ Kenneth Avenue. The officers' affidavits also provide that after a foot chase, Kramer was arrested without incident. A reasonable jury could find that based upon those facts, the New Kensington defendants did not use unreasonable force on Kramer that violated his Fourth Amendment rights.

Kramer, however, presented evidence in the form of his own affidavit that directly and materially contradicts the evidence presented by the New Kensington officers. In the affidavit Kramer avers that when he saw Baker enter the second floor landing of 1818 ½ Kenneth Avenue, he voiced his surrender, and then was pushed off the second floor balcony by Baker, sustaining a "C1 fracture." (ECF No. 98-2.) A reasonable jury based upon those facts could find Baker's use of force on Kramer, i.e., pushing Kramer off a second story balcony after Kramer was willing to surrender, was unreasonable and violated his Fourth Amendment rights. Under those

circumstances, there is a material dispute of fact about whether Baker used excessive force against Kramer.

### 2. Kramer's Averment that the Arresting Officers Pinned Kramer to the Ground

The New Kensington defendants set forth evidence in the form of affidavits from Grillo, Baker, Schubert, Weber, and Cardenas, that (1) Kramer jumped off the second floor balcony, and (2) he ran from the police, but was eventually apprehended without incident near Schubert's police vehicle. Based upon that evidence, a reasonable jury could find in the New Kensington defendants' favor, i.e., none of the officers used excessive force on Kramer.

Kramer, however, adduced evidence sufficient for a reasonable jury to find in *his* favor, i.e., Baker, Schubert, and Grillo used excessive force on him in violation of his Fourth Amendment rights. Kramer in his affidavit avers that after Baker pushed him off the balcony, he fell to the ground and "began hollering in pain due to a substantial amount of pain to [his] neck and back area;" then, "the arresting officers pinned [him] to the ground by placing a knee onto [his] neck and lower back which magnified the painful effects of [his] injuries;" and "[he] screamed in pain and repeatedly requested the arresting officers and bystander officers to provide [him] with medical attention." (ECF No. 90-2 ¶¶ 6-9.) Grillo, Baker, and Schubert were the arresting officers who—according to Kramer—pinned him to the ground after Baker pushed him off the second floor balcony. (ECF No. 39 ¶ 16; ECF No. 40 ¶ 16; ECF No. 83-5 ¶ 14.) Based upon the foregoing evidence, a reasonable jury could find that based upon Kramer falling from a second floor balcony and then screaming in pain and requesting medical attention, the use of force, i.e., three officers pinning Kramer to the ground with a knee on his neck and back, was unreasonable and violated Kramer's Fourth Amendment rights.

For the foregoing reasons, the court rejects the magistrate judge's report and recommendation to the extent it recommends that judgment be entered in the New Kensington defendants' favor based upon the alleged use of excessive force by Grillo, Schubert, and Baker. The motion for summary judgment will be denied with respect to these claims against Grillo, Schubert, and Baker.

### B. Deliberate Indifference to Medical Needs

Kramer asserts a claim under § 1983 based upon Weber and the New Kensington defendants being deliberately indifferent to his need for medical care, and, thus, violating his Fourteenth Amendment rights. Cooleen v. Lamanna, 248 F. App'x. 357, 361 (3d Cir. 2007) ("[S]ubstantive due process rights are invoked by pre-trial detainees and other nonconvicted persons seeking medical care who cannot invoke the Eighth Amendment.") (citing Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987) ("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause….The Due Process clause requires the government to provide appropriate medical care.")). "[P]olice officers are liable for the unconstitutional denial of medical assistance when there is (1) a serious medical need, and (2) acts or omissions by the police officers that indicate deliberate indifference to that need." Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 702 (E.D. Pa. 2011) (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003)). "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" Id. (quoting Natale, 318 F.3d at 582). The United States Court of Appeals for the Third Circuit has "found deliberate indifference in situations where 'necessary medical treatment is delayed for non-medical reasons.'" Natale, 318 F.3d at 582 (quoting Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1997)).

In the affidavits submitted by the New Kensington defendants, the officers assert Kramer got up and ran for approximately twenty minutes after he jumped from the second floor balcony, was arrested without any further physical contact by the officers, and never complained or exhibited any signs of a serious medical condition or need for medical care. Under those circumstances, a reasonable jury could find in favor of the New Kensington defendants, i.e., they did not act deliberately indifferent to Kramer's need for medical care.

Kramer in his affidavit, however, avers that he repeatedly requested medical attention from the officers on scene, i.e., Baker, Grillo, Schubert, and Weber, and the officers refused to provide him medical attention. The New Kensington defendants do not dispute that Kramer had a serious medical need; indeed, his medical records show he had a "C1 fracture." (ECF No. 98-3.) The New Kensington defendants dispute that they knew Kramer at the time of his arrest had a serious medical need and that they acted deliberately indifferent to that medical need. Based upon Kramer's affidavit in which he asserts he "hollered" in pain after being pushed from the second floor balcony, was pinned to the ground with a knee on his neck and back by the officers after his fall, and requested medical attention at the scene of his arrest and while in the custody of the New Kensington Police Department, a reasonable jury could find that the officers at the scene, i.e., Grillo, Schubert, Baker, and Weber, acted with deliberate indifference to Kramer's serious medical need. In other words, Kramer's affidavit is sufficient to create a material dispute of fact with respect to his claim that Baker, Grillo, Schubert, and Weber violated his constitutional rights by ignoring his pleas for medical care after a fall from a second floor balcony. The court, therefore, rejects the magistrate judge's recommendation that summary judgment be granted in favor of those defendants and will deny the motion for summary

judgment with respect to this claim asserted against Baker, Grillo, and Schubert, and will not sua sponte enter judgment in favor of Weber.

### C.  Due Process Claims

Kramer in the amended complaint asserts § 1983 claims for "due process" against the New Kensington defendants. The court previously granted Weber's motion to dismiss with respect to the due process claim asserted against him. The magistrate judge in her report and recommendation commented that Kramer failed to state a due process claim against Weber. The magistrate judge in dicta noted that Kramer failed to state a due process claim against *any* defendant in this case. Although the New Kensington defendants request summary judgment be entered in their favor with respect to *all* claims asserted against them, (ECF No. 83 at 6), they did not satisfy their burden to show the absence of a genuine issue of material fact or an absence of evidence to support Kramer's case. Marten, 499 F.3d at 295 (3d Cir. 2007). The court, therefore, cannot enter summary judgment in the New Kensington defendants' favor with respect to the § 1983 claims based upon a violation of Kramer's due process rights. Kramer's § 1983 claims based upon alleged violations of his due process rights asserted against the New Kensington defendants remain in this case. It is not clear to this court, however, whether Kramer—in light of the dismissal and the reasons for the dismissal of this claim against Weber—intends to proceed on the due process § 1983 claim against the New Kensington defendants. Kramer must within thirty days of the entry of the accompanying order file a notice with the court to advise the court whether he intends to proceed with this claim against the New Kensington defendants. If Kramer fails to do so, the court will conclude he consents to the dismissal of those claims and they will forthwith be dismissed.

### D.  Municipal Liability

1.  **Liability**

The court will adopt the report and recommendation with respect to Kramer's municipal liability claims against New Kensington and the New Kensington Police Department based upon Baker's, Grillo's, and Schubert's alleged use of excessive force and deliberate indifference to Kramer's medical needs. A municipality cannot be held liable under § 1983 for the actions of its employees on a respsondeat superior theory. <u>Monell v. N.Y. City Dep't of Soc. Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). When a municipal entity is sued under 1983, "the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (citing <u>Monell</u>, 436 U.S. at 690). There must be a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." <u>Jiminez v. All Am. Rathskeller, Inc.</u>, 503 F.3d 247, 249–50 (3d Cir. 2007) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)). The Third Circuit Court of Appeals has directed that a complaint alleging a <u>Monell</u> claim "must identify a custom or policy, and specify what exactly that custom or policy was." <u>McTernan v. City of York</u>, 564 F.3d 636, 658 (3d Cir.2009) (citing <u>Phillips</u>, 515 F.3d at 232). Kramer did not adduce evidence sufficient to show any custom or policy of New Kensington or the New Kensington Police Department which warrants holding them liable in this case based upon Baker's, Grillo's, and Schubert's alleged use of excessive force and deliberate indifference to Kramer's medical needs. Kramer in his affidavit sets forth only conclusory allegations about New Kensington and the New Kensington Police Department maintaining customs and policies that resulted in his injuries in this case. Those allegations are not based upon Kramer's personal knowledge. A reasonable jury based upon those conclusory

allegations could not find in favor of Kramer with respect to his claims asserted against the municipality based upon Baker's, Grillo's, and Schubert's alleged use of excessive force and deliberate indifference to Kramer's medical needs. For that reason, the court will adopt the report and recommendation of the magistrate judge and grant the motion for summary judgment with respect to this issue. Judgment will be entered in favor New Kensington and the New Kensington Police Department and against Kramer with respect to the municipal liability claims based upon Baker's, Grillo's, and Schubert's alleged use of excessive force and deliberate indifference to Kramer's medical needs.

### 2. Discovery

Kramer in his brief in opposition to the New Kensington defendants' motion for summary judgment argues evidence with respect to his municipal liability claims is in the possession of the New Kensington defendants, and they did not comply with his discovery requests for that information. (ECF No. 91 at 3.) The magistrate judge instructed Kramer that it is his responsibility to inform the court about any change in address, and the New Kensington defendants attempted to serve him with documents and responses to his discovery requests but were unsuccessful because he failed to advise the court about his current mailing address. (ECF No. 82.)

The magistrate judge's case management order dated December 3, 2014, provided:

**IT IS FURTHER ORDERED** that no later than February 5, 2015, Plaintiff shall advise the Court of any additional relevant discovery he requests in this action in one submission to the Court, including copies of each and every discovery request he seeks to pursue. The Court will not grant piecemeal requests for discovery. Plaintiff may not submit requests for discovery directly to the Defendants without leave of Court. Discovery shall close in this case on March 5, 2015.

...

**IT IS FURTHER ORDERED** that Motions for Summary Judgment shall be filed on or before April 6, 2015. Responses to Motions for Summary Judgment

shall be filed on or before May 5, 2015. Replies shall be filed on or before May 19, 2015. Such responses must comply with the Local Rules for the Western District of Pennsylvania, as detailed below.

(ECF No. 78.) On December 3, 2014, the court mailed the case management order, among other orders, to Kramer at the latest address he provided to the court, i.e., a mailing address in Youngstown, Ohio. On December 22, 2014, the court received notice from the New Kensington defendants that they attempted to serve discovery on Kramer at the Youngstown, Ohio, address, but the discovery was returned to them and stamped "Return to Sender-Inmate Paroled/Discharged." (ECF No. 80 ¶ 3.) On December 30, 2014, Kramer filed a notice of change of address informing the court that he was incarcerated at the Allegheny County Jail and his mailing address had changed. (ECF No. 81.) On January 8, 2015, the New Kensington defendants mailed the discovery to Kramer at the Allegheny County Jail. (ECF No. 82.) On February 4, 2015—more than one month before discovery closed, one day before Kramer was to advise the court of any additional discovery he requested and two months before the court's deadline for filing motions for summary judgment—the New Kensington defendants filed their motion for summary judgment. (ECF No. 83.) In light of the foregoing procedural history, which shows that factual discovery was not scheduled to end in this case until March 5, 2015, Kramer may file a motion within thirty days of the date of the accompanying order to seek additional discovery and should specifically address where he was incarcerated on December 3, 2015, and the date on which he was transferred to the Allegheny County Jail.

### E. Weber

On April 4, 2014, this court adopted the report and recommendation of the magistrate judge, and granted in part and denied in part a motion to dismiss filed by Weber. The court granted the motion to dismiss with respect to the excessive force and due process claims asserted

against Weber, and denied the motion to dismiss with respect to the deliberate indifference to medical needs claims asserted against him. The magistrate judge in her report and recommendation granting summary judgment in favor of the New Kensington defendants recommends granting summary judgement in favor of Weber although he did not file a motion for summary judgment. It is not necessary for the court to decide whether that decision of the magistrate judge was appropriate because the court rejects the magistrate judge's rationale for granting summary judgment in favor of Grillo, Baker, and Schubert with respect to that claim. In other words, even if Weber joined in the New Kensington defendants' motion for summary judgment, he would not be entitled to summary judgment on the claim based upon his alleged indifference to Kramer's medical needs. The court, therefore, will reject the recommendation of the magistrate judge to grant summary judgment in favor of Weber.

## VI. Conclusion

Kramer's affidavit about his personal observations and experiences on July 17, 2011, is sufficient to create a genuine dispute of material fact with respect to his § 1983 claims for excessive force and deliberate indifference to medical needs. The court at the summary judgment stage cannot make credibility decisions or weigh the evidence. The court will, therefore, reject the magistrate judge's report and recommendation and deny the motion for summary judgment (ECF No. 83) with respect to the individual defendants for those claims. The court also rejects the report and recommendation that summary judgment be granted in favor of Weber.

Kramer's affidavit is not sufficient to defeat the motion for summary judgment with respect to his claims against New Kensington and the New Kensington Police Department based upon Baker's, Grillo's, and Schubert's alleged use of excessive force against Kramer and deliberate indifference to his medical needs. The court will adopt the report and recommendation

of the magistrate judge and grant the motion for summary judgment (ECF No. 83) with respect to those claims. Kramer must file a notice with the court within thirty days of the entry of the accompanying order to advise the court whether he intends to proceed against the New Kensington defendants with his § 1983 claims based upon the violation of his due process rights. Failure to do so will result in the dismissal of those claims.

Kramer may file a motion within thirty days of the date of the accompanying order to seek additional discovery and should specifically address where he was incarcerated on December 3, 2015, and the date on which he was transferred to the Allegheny County Jail.

An appropriate order will be entered.

BY THE COURT,

Dated: September 25, 2015

JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge